UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COLUMBUS MCKINNON CORPORATION,

       Plaintiff,
 v.                **DECISION AND ORDER**
                     08-CV-167S

SST CASTING, INC.,
a/k/a SST CORPORATION, INC., and
SST BEARING CORPORATION,

        Defendants.

## I. INTRODUCTION

Plaintiff Columbus McKinnon Corporation ("CMC") commenced this action pursuant to 28 U.S.C. § 2201, and seeks a declaration relative to certain contractual rights and obligations. (Docket No. 1.) Presently before this Court is Defendants' Motion to Dismiss the Complaint for lack of subject matter jurisdiction, or alternatively, to transfer the case to the Southern District of Ohio. (Docket No. 10.) Plaintiff opposes both requests. For the reasons discussed below, Defendants' Motion to Dismiss and its alternative Motion to Transfer are both denied.

## II. BACKGROUND

Plaintiff CMC is a corporation organized under the laws of the State of New York, with its headquarters in Amherst, New York. (Docket No 1, Compl., ¶ 3.) CMC manufactures material handling products and has operating divisions and facilities located across the country. (Id.) Defendants SST Casting, Inc. and SST Bearing Corporation ("SST") manufacture and supply various industrial products and are headquartered in

1

Loveland, Ohio. (Id., ¶ 4.) The parties executed separate Strategic Supplier Agreements in 2001, 2002, and 2006, pursuant to which SST was to supply CMC with certain casting and bearing products for specified time periods. (Compl., ¶¶ 8, 14, & 20.)

In 2005and 2006, Michael Hill, an SST employee, raised concerns that the volumes of CMC's orders for certain parts were well below the annual usage rates specified in the 2002 Supplier Agreement. (Docket No. 24, Wozniak Decl., ¶ 5.) In addition, he asked CMC to issue purchase orders or otherwise pay for some or all of the products that SST had in its possession. (Id.) Kurt Wozniak, CMC's Director of Corporate Development, informed Mr. Hill that, under the agreement, CMC was not required to order any set number of products. (Wozniak Decl., ¶ 7.)

On January 9, 2008, Deborah Lydon, legal counsel for SST, contacted CMC and David Shine. (Docket No. 10, Ex. 1, Lydon Aff., ¶ 2, March 20, 2008; Docket No. 23, Shine Aff., ¶ 9.) Lydon demanded payment for the goods CMC ordered from SST and also stated that she would like to hear from CMC by early the following week so as to avoid more formal proceedings. (Lydon Aff., ¶ 2; Shine Aff., ¶ 10.) But Lydon did not hear from CMC over the next two weeks, and so Lydon contacted Kurt Wozniak. (Lydon Aff., ¶ 2.) Wozniak suggested that Lydon prepare a "position statement," wherein SST outline its claims in more detail. (Lydon Aff., ¶ 3.) Pursuant to Wozniak's suggestion, Lydon prepared the statement, and emailed it to Wozniak on January 30, 2008. (Lydon Aff., ¶ 4.)

The position statement addresses concerns regarding the 2001, 2002, and 2006 agreements. (Docket No. 9, Ex. D.) To satisfy the terms of the 2001 and 2002 agreements, SST asks CMC to take and pay for all parts SST has in stock, and to

2

compensate SST for the remaining sales that should have occurred. To satisfy the terms of the 2006 agreement, SST presents CMC with various options.[1]

Lastly, the position statement states that "SST has incurred losses approaching $1,000,000;" that "valuable transactions" are "currently occurring ;" and that, "[w]e appreciate the opportunity to resolve this controversy amicably, if possible. Accordingly, we would appreciate efforts being conducted by CMC to bring about a resolution no later than February 14, 2008." (Id., p. 3.)

Plaintiff CMC took no official action and did not discuss the statement with SST prior to February 14, 2008. Lydon emailed Wozniak on February 15, 2008, and stated that she would appreciate a response to the statement by February 19, 2008 "before other remedies may be pursued." (Lydon Aff., ¶ 5; Wozniak Aff., ¶ 11.) On or about February 18, 2008, Timothy R. Harvey, CMC's in-house legal counsel, spoke with Lydon about the statement. (Docket No. 25, Harvey Decl., ¶ 8.) Harvey requested that Lydon give him until February 29, 2008 to respond to her statement. (Id.) Lydon accommodated Harvey's request for additional time.[2]

During the same phone conversation, Lydon claims she informed Harvey that she "*would have to file a lawsuit by the end of February* if the parties had not reached a

---

[1] For example, the statement notes, "SST is, however, entitled to recover its lost income that was contemplated by that Agreement, which was supposed to be completed by September 30, 2008. *If CMC is willing to remedy its conduct* to date on this Agreement by agreeing to a schedule whereby 2 ½ years' worth of parts reflected on the Agreement can be released, shipped and paid for by late September, 2008, SST will consider the breach properly resolved. *If CMC prefers*, it can simply agree to pay SST's lost income on the deal by 9/30/08, as well as the legal expenses incurred to pursue this remedy." (Docket No. 9, Ex. D, p.3) (emphasis added).

[2] Despite her accommodation granting Plaintiff additional time to reach an amicable resolution, Ms Lydon states in her affidavit that, "[d]uring this conversation, it became evident that the parties had a fundamental difference of opinion, and that *no amicable resolution was going to be reached*." (Docket No. 26, ¶ 2) (emphasis added).

3

settlement or agreed to a tolling agreement." (Docket No. 26, Lydon Aff., ¶ 4, June 5, 2008) (emphasis added).[3] Lydon also claims that she asked Harvey to instruct CMC's various divisions "not to destroy any documents or other evidence that might be necessary for litigation." (Id., ¶ 6.) Harvey's version of events differ from those of Lydon. For example, Harvey claims Lydon indicated that "she *'may' be forced to bring an action* against CMC if the parties could not resolve SST's purported issues, [and] she did not specifically say that she would be filing an action..." (Docket No. 25, Harvey Decl., ¶ 12) (emphasis added). Additionally, Harvey never mentioned Lydon's alleged instruction to preserve all litigation documents.

Harvey did not respond to Lydon as promised. Instead, on February 26, 2008, CMC filed the instant action. On February 28, 2008, SST, allegedly unaware of CMC's suit, filed its own lawsuit against CMC in the Hamilton County (Ohio) Court of Common Pleas, seeking over $350,000 in damages. On April 8, 2008, CMC removed the Ohio action to the United States District Court for the Southern District of Ohio (Docket No. 21, Ex. A), and CMC moved for a stay pending this Court's determination of SST's Motion to Dismiss and/or Transfer.

### III. DISCUSSION

**A.    Defendants' Motion to Dismiss**

***1.    Arguments of the Parties***

The issue here is whether Plaintiff's Complaint was brought in anticipation of, and in response to, Defendants' purported notification of their intention to sue Plaintiff.

---

[3] See also Lydon Aff., ¶ 6, March 20, 2008 ("action would be taken by SST before February 29, 2008, if an amicable resolution could not be achieved.")

4

Because Plaintiff filed its Complaint less than one month after receiving Defendants' position statement, and only one week after Mr. Harvey's conversation with Ms. Lydon and 3 days prior to the deadline Harvey requested to respond to Lydon's position statement, Defendants argue that Plaintiff was aware of Defendants' intention to commence suit, and that this action amounts to a "preemptive strike." (Defs.' Mem., p. 8.)[4] As a result, Defendants argue that in light of Plaintiff's anticipatory actions, this Court should decline to exercise subject matter jurisdiction over this action, and therefore dismissal is appropriate. (Id.)

In response to Defendants' contention, Plaintiff argues that this Court has subject matter jurisdiction over the instant action because of the "first-filed rule." (Pl.'s Mem., p. 7.)[5] Furthermore, Plaintiff argues that Defendants' position statement never indicated an intention to sue Plaintiff because the statement is vague and inconclusive. (Id., p. 10.) As a result, Defendants argue that the instant action was not filed in response to a direct threat of litigation, and therefore dismissal is unwarranted.

### *2. Legal Standard*

The Declaratory Judgment Act ("DJA") holds that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. As the Second Circuit held in Dow Jones & Co., Inc. v. Harrods Ltd., the statutory use of the word "may" affords district courts "a broad grant

---

[4] This citation refers to Defendants' Memorandum of Law in Support of their Motion to Dismiss. (Docket No. 11.)

[5] This citation refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss. (Docket No. 20.)

of discretion," and allows courts "to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." 346 F.3d 357, 359 (2d Cir. 2003).

Balanced against the district court's broad discretion to hear claims brought under the DJA is the first-filed rule," which establishes a strong presumption in favor of the forum of the first filed suit." 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 131 (S.D.N.Y. 1996). In other words, where, as here, "an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action." City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991) (internal citations omitted).

But the first-filed rule is not to be mechanically applied. For instance, a later filed action will not be enjoined if there are "special circumstances which justify giving priority to the second [action]." Exxon Corp., 932 F.2d at 1025 (internal citations omitted). "Special circumstances justifying an exception to the [first-filed] rule exist where the first suit constitutes an improper anticipatory filing or was motivated solely by forum shopping." Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001) (internal citations omitted). As Justice William J. Brennan, Jr. remarked, "the federal declaratory judgment is not a prize to the winner of a race to the courthouses." Employers Ins. of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008) (citing Perez v. Ledesma, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J. dissenting)).

"Courts have [] found anticipatory conduct where the party bringing the declaratory judgment action knew with near certainty that a suit would be brought against it." Chicago

6

Ins. Co. v. Holzer, No. OO-CV-1062, 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000). The filing of a declaratory judgment action that is triggered by a "notice letter," which gives "specific warnings as to deadlines and subsequent legal action" is an indicator of anticipatory conduct. BuddyUSA, Inc. v. Industry Ass'n of America, Inc., 21 Fed. Appx. 52, 55 (2d Cir. 2001).

But not every declaratory judgment action that follows a "notice letter" is considered an anticipatory filing. Courts will not find anticipatory conduct where the subsequent litigation followed a notice letter that failed to sufficiently notify the plaintiff about the defendant's intention to commence suit. In order to determine whether the defendant's letter provided sufficient notice, courts look for three key factors. Those factors include whether the notice letter informs a plaintiff of, (1) the intention to file suit, (2) includes a filing date, and/or (3) includes a specific forum for the filing of the suit. J. Lyons & Co. Ltd. v. Republic of Tea, Inc., 892 F. Supp. 486, 491 (S.D.N.Y. 1995). "Communications deemed to constitute notice of a suit generally contain at least one of those [three] elements." Employers Ins. of Wausau v. Prudential Ins. Co. of America, 763 F. Supp. 46, 49 (S.D.N.Y. 1991). Conversely, actions that are filed in response to vague notice letters will not be considered anticipatory. Compare, e.g., Ensil Intern Corp. v. Lear Siegler Services, Inc., No. 05-CV-380, 2006 WL 2246385, at *3 (W.D.N.Y. Aug. 4, 2006) (Elfvin, J.) (anticipatory action since filed in response to letter stating, "if the sum demanded was not paid within ten days, Lear would commence legal action. Ensil filed suit on the eleventh day"); Holzer, 2000 WL 777907, at *1, 4 (specific warning requirement was met by letter stating that if recipient's decision "remains unaltered, we will commence suit in a court of appropriate jurisdiction within forty-eight (48) hours"); Mondo, Inc. v. Spitz, 97-CV-

7

4822, 1998 WL 17744, at *1 (S.D.N.Y. Jan. 16, 1998) (declaratory judgment action filed after receipt of a letter stating the sender's intention to "file suit in California if settlement negotiations were not fruitful" was anticipatory filing.); with, e.g., BuddyUSA, Inc., 21 Fed. Appx. at 56 (declaratory action not anticipatory because filed in response to notice letter that was vague about what legal action, if any, the defendant planned to take); Employers Ins. of Wausau, 763 F. Supp. at 49 (letters stating intent to "pursue all available remedies" and "hoped to avoid litigation" were merely attempts to initiate settlement negotiations rather than notice of a lawsuit); J. Lyons & Co. Ltd., 892 F. Supp. at 491 (no anticipatory filing where party "mention[ed] the possibility of legal action, [but] it did not specify any date or forum").

  **3. Analysis**

Applying these principles to the instant case, this Court finds that Defendants have made no showing of special circumstances that warrant a departure from the strong presumption of the first filed rule. In arriving at its determination, this Court notes that Lydon's position statement does not contain any of the three key factors used to evaluate whether sufficient notice has been given. For instance, the position statement never explicitly mentions Defendants' intention to commence suit against Plaintiff. Nor does the statement specify a date in which Defendants will commence suit, or a particular forum in which such a suit will be commenced. Instead, the statement notes that Defendants SST "appreciate the opportunity to resolve the controversy amicably," and also that SST would "appreciate efforts being conducted by CMC to bring about a resolution no later than February 14, 2008." Although the statement notes the amount SST claims it has lost as a result of Plaintiff's actions, and also contains various requests of Plaintiff to remedy the

8

situation, the statement does not clearly indicate, with near certainty, that SST was about to bring an action against Plaintiff. Rather, the statement appears to be an attempt to procure a response from CMC, and also to amicably resolve SST's issues.

Although Defendants also rely on the telephone conversation between Lydon and Harvey on February 18, 2008, wherein Lydon asked Harvey not to destroy any documents that might be necessary for litigation, and also granted Harvey until February 29, 2008 to respond to Lydon's position statement, this conversation is insufficient to characterize Plaintiff's subsequent suit as anticipatory. For instance, Harvey's version of events differ from those of Lydon. Specifically, Lydon states that she told Harvey that "action would be taken by SST before February 29, 2008, if an amicable resolution could not be achieved." (Lydon Aff., ¶ 6, March 20, 2008.) But Harvey claims that Lydon said she "may" be forced to bring an action if the parties could not resolve the issues, and also states that SST made similar claims in the past without resort to litigation. (Harvey Aff., ¶ 12.) A similar situation arose in BuddyUSA Inc., where the defendant's letter failed to meet the requirements of a notice letter, and the parties gave differing accounts of what followed the letter. 21 Fed.Appx at 54. Like BuddyUSA, this Court is not prepared to find anticipation where neither Defendants' position statement nor the parties' subsequent behavior clearly indicates that Defendants notified Plaintiff of an intent to sue.

Defendants also argue that this case is analogous to Holzer, a case where the plaintiff's suit was found to be anticipatory, because Plaintiff CMC commenced this action prior to the February 29, 2008 "deadline" imposed by Lydon during her telephone conversation with Harvey. In support of their argument, Defendants claim that, according to Holzer, "the most convincing evidence of proper notice is often found in the [] plaintiff's

9

own response to a demand." (Defs.' Reply, p. 6.)[6]

This Court disagrees with Defendants. First, Holzer never acknowledged that the plaintiff's response to the defendant's letter is the most convincing evidence, and Defendants offer no citation. Contrary to Defendants' assertion of a response driven inquiry, Holzer acknowledged that the contents of the notice letter guide the analysis because if the letter does not notify the plaintiff about an impending suit, then the plaintiff's subsequent actions are simply not in "response" to it. Therefore, Defendants' argument is misplaced as Defendants fail to focus on the quality of the notice conveyed.

Moreover, Plaintiff's "response" in this case is completely unlike the plaintiff in Holzer. For example, in Holzer, the plaintiff received the defendant's letter, which stated, "we will commence suit in a court of appropriate jurisdiction in forty eight (48) hours," and responded by filing a declaratory judgment action the following day. 2000 WL 777907, at *1. But in this case, Plaintiff received the position statement, which stated that "[SST] would appreciate efforts being conducted by CMC to bring about a resolution no later than February 14, 2008," and simply took no action prior to the February 14, 2008 deadline contained in the position statement. Although Plaintiff commenced suit prior to the second deadline of February 29, 2008, this Court has already found that Defendants' focus on the response is misplaced.

. . .

Accordingly, Plaintiff's declaratory judgment action was not in anticipation of a lawsuit by Defendants because there is no indication that Plaintiff knew with near certainty

---

[6]This citation refers to Defendants' Reply in Support of the Motion to Dismiss and/or Transfer. (Docket No. 28.)

that a suit would be brought against it. Therefore, the filing of the instant action was not an attempt to preemptively deprive Defendants of their right to choose their own forum. For these reasons, Defendants' Motion to Dismiss is denied.

**B.     Defendants' Motion to Transfer**

Defendants alternatively request that this Court transfer the case to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). Under section 1404(a), a court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). Plaintiff concedes that this action could have been brought in the Southern District of Ohio. However, Plaintiff urges that the relevant factors do not compel the transfer of this case.

For a motion to transfer, "[t]he burden [] lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum 'unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice.'" Capitol Records, LLC v. VideoEgg, Inc., No. 08-CV-5831, 2009 WL 614727, at *10 (S.D.N.Y. March 9, 2009) (citing Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 995, 962 (S.D.N.Y. 1995)).

In determining whether transfer is appropriate, the court may consider the following factors: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative financial means of the parties; (7) the comparative familiarity of

each district with the governing law; (8) the weight afforded plaintiff's choice of forum; and (9) judicial economy and the interests of justice. Herbert Ltd. Partnership v. Electronic Arts Inc., 325 F.Supp.2d 282, 285-86 (S.D.N.Y. 2004). "No one factor is controlling or determinative, rather the Court must, in its discretion, balance all of the factors in making its decision." Praxair, Inc. v. Morrison Knudsen Corp., No. 00-CV-0892, 2001 WL 118585, at *2 (W.D.N.Y. Feb. 6, 2001) (Elfvin. J.). The court has "considerable discretion" in balancing these factors. Red Bull Associates v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2d Cir. 1998).

With these principles in mind, this Court will address each of the nine factors in turn based upon the affidavits and the other submissions of the parties.

### 1. *The Convenience of Witnesses*

Defendants argue that the Southern District of Ohio "contains nearly every single witness who will testify on behalf of SST." (Defs.' Mem., p. 8.) They also contend that "it is fair to assume" that Plaintiff's witnesses will be called from locations where parts were delivered – i.e., "North Carolina, Indiana, Tennessee, Virginia, Florida, Michigan, Missouri, Iowa, and Ohio." (Id., p. 9.) Defendants assert that if Plaintiff fails to call witnesses from these areas, Defendants will do so (Defs.' Reply, p. 9.), and also that "Ohio seems to be a more convenient, centrally located forum for CMC's employees in nearby states," than New York. (Defs.' Mem., p. 19.) In response, Plaintiff contends that nearly every single witness, who will testify on its behalf, is located in New York – the location of its headquarters. (Pl.'s Mem., p. 19.)

"Courts typically regard the convenience of the witnesses as the most important factor." VideoEgg, Inc., 2009 WL 614727, at *11. And in a convenience analysis, the

12

movant "must clearly specify key witnesses to be called and make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). "The convenience of witnesses who reside in neither the current nor the transferee forum is irrelevant when considering a motion to transfer." Herbert Ltd. Partnership v. Electronic Arts Inc., 325 F. Supp. 2d 282, 288 (S.D.N.Y. 2004).

Defendants fail to establish, by clear and convincing evidence, that this factor weighs in its favor. For instance, Defendants only identify the alleged inconveniences of their own witnesses. (Lydon Aff. ¶ 9, March 20, 2008.) Additionally, to the extent that Defendants stake their inconvenience claim on any potential witness that is located in North Carolina, Tennessee, Virginia, Florida, Michigan, Missouri, and Iowa – essentially any state other than New York or Ohio in which the witness would have to travel regardless of the venue – this is an irrelevant consideration. See Herbert Ltd., 325 F. Supp. 2d at 288. Therefore, Defendants' argument that Ohio will be more convenient because it is a centrally located forum is without merit, and this important factor is at best neutral.

### 2. *The Inconvenience of Parties*

Defendants argue that it will be more convenient for the parties in this case to litigate the matter in the Southern District of Ohio, and essentially rely on the reasons set forth in their argument for witness inconvenience. Because this Court was not persuaded by Defendants' contention that the witnesses will be inconvenienced, this Court is similarly unpersuaded that the parties will be inconvenienced by litigating the claim in this forum.

This Court also finds that Defendants' claims of inconvenience are greatly exaggerated. Because Buffalo is easily accessible by air or other means, and numerous employees of SST have demonstrated an ability to travel to Buffalo in the past, this claim

13

is unpersuasive.  See Carnival Cruise Lines v. Shute, 499 U.S. 585, 594, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (observing that Florida, the venue required under a forum selection clause, was "not a remote alien forum"); see also Mpower Communications Corp. v. Voipld.com, Inc., 304 F. Supp. 2d 473, 476 (W.D.N.Y. 2004) (Larimer, J.) ("Its weather notwithstanding, Rochester is not Siberia, and is easily accessible from Chicago by air or other means").  And because New York and Ohio are essentially border states, this Court finds that the commute is not as inconvenient as alleged.  See Marrone v. Teleservices Group, Inc., No. 02-CV-5763, 2008 WL 2228990, at *3 (E.D.N.Y. May 28, 2008) (finding that "defendants and any non-party witnesses will not be inconvenienced in light of proximity between New Jersey and the Eastern District.  At most, any witnesses will have to travel approximately sixty (60) miles...).  Accordingly, this factor does not weigh in favor of transfer.

### 3. The Location of the Relevant Documents and the Relative Ease of Access to Sources of Proof

Defendants argue that this factor weighs in their favor because Plaintiff's documents are allegedly "spread across its various locations," while Defendants' documents are "centralized at its primary location in Ohio."  (Defs.' Mem., pp. 9-10.)  Defendants also contend that "the unreleased goods (to the extent they are in this country) are located in SST's warehouse in Ohio."  (Id., p. 10.)

Defendants arguments are rejected for several reasons.  First, Defendants have not identified any hardship in transporting documents to this forum.  Second, "in the age of cell phones, email, and fax machines, it is unlikely that litigating this action in New York," would be that difficult.  Mpower Communications Corp., 304 F. Supp. 2d at 476.  Third, this case

14

is a contract dispute, and therefore, the fact that unreleased goods are being stored at a warehouse in Ohio has no bearing on the interpretation of the underlying contract at issue. Accordingly, this factor does not weigh in favor of transfer.

### 4. *The Locus of the Operative Facts*

Defendants argue that this factor weighs in their favor because the greatest number of facts arose in the Southern District of Ohio. Specifically, Defendants claim that orders were placed in Ohio, goods were shipped from overseas to SST's Ohio facility, and goods were shipped from Ohio to various CMC locations throughout the country. (Defs.' Memo, p. 10.)

As Plaintiff argues, Defendants can only show, at best, that this factor is neutral, which falls well short of their burden. For example, SST came to New York to pitch for business, negotiate prices in New York, and discuss the terms of agreement with CMC. And later, Defendants sent goods to New York. Accordingly, Defendants have not met their burden, and this factor does not weigh in favor of transfer.

### 5. *The Availability of Process to Compel Unwilling Witnesses*

This factor is not at issue as Defendants claim it is "neutral." (Defs.' Mem., p. 10.) Defendants do not foresee the need to compel the attendance of non-party affiliated witnesses.

### 6. *The Relative Financial Means of the Parties*

Defendants argue that this factor weighs in their favor because Plaintiff is a large, publicly-traded corporation with several facilities located across the country and, in 2007, had net sales of nearly $600 million. On the other hand, Defendants are much smaller,

private companies, with only one office location. As a result, Defendants argue that Plaintiff would have a much easier time bearing the costs of travel associated with trying this case.

A comparison of each company's financial means is a relevant consideration in this context. See VideoEgg, Inc., 2009 WL 614727, at *12 ("Hi5 describes itself as a 'small start up' company and with approximately 100 employees. It is certainly dwarfed by Plaintiffs who are subsidiaries of the London-based EMI Group, whose corporate parent reported 2007 annual revenues of more than $3 billion"). Because Plaintiff would have an easier time bearing the costs of travel, this factor weighs in favor of transfer.

### 7. The Comparative Familiarity of Each District with the Governing Law

Defendants argue this factor weighs in their favor because the dispute is to be resolved under Ohio law because of the parties' course of conduct, and also because the invoices that went out to CMC state that Ohio law governs any disputes. Although the Supplier Agreements that are ultimately at issue do not contain forum selection clauses – nor do Defendants argue otherwise – Defendants argue that their invoices establish a valid forum selection clause.

Both of Defendants' argument are rejected. First, one conclusory sentence in Defendants' briefing does not make a clear and convincing showing relative to governing state law. Second, Defendants' invoice argument is legally flawed. Because "the addition of a forum selection clause is considered a material alteration, [it] cannot be unilaterally incorporated into a contract without the consent of the parties." Vanlab Corp. v. Blossum Valley Foods Corp., No. 04-CV-6183, 2005 WL 43772, at *3 (W.D.N.Y. Jan. 10, 2005) (citing One Step Up, Ltd. v. Kmart Corp., No. 97-CV-1469, 1997 WL 391117 (S.D.N.Y. July

16

11, 1997)). And further, "a bill of lading issued after the formation of a contract and not referred to in that contract serves only as a receipt for the transfer of the goods, and will not serve to alter the terms of the previous agreement." Vanlab Corp., 2005 WL 43772, at *3 (citing Greenstone Shipping Co., S.A. v. Transworld Oil, Ltd., 588 F. Supp. 574, 579-80 (D. Delaware 1984)). Here, Defendants have provided no evidence that Plaintiff expressly assented to the addition of the forum selection clause, and therefore Plaintiff is not bound by its terms.

### 8. *The Weight Afforded Plaintiff's Choice of Forum*

"A plaintiff's choice of forum is generally entitled to considerable weight – particularly when the plaintiff is a resident of the forum district – and should not be disturbed unless the balance of several factors is strongly in favor of defendant." Fuji Photo Film Co., Ltd. V. Lexar Media, Inc., 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006). However, Defendants contend that Plaintiff's choice of forum is not entitled to deference for the reasons mentioned in their Motion to Dismiss. Because this Court denied Defendants' Motion to Dismiss, this Court similarly rejects Defendants' argument in this context. Accordingly, this Court finds that Plaintiff's choice of forum is entitled to deference, and this factor does not weigh in favor of transfer.

### 9. *The Judicial Economy and the Interests of Justice*

Finally, Defendants argue that this factor weighs in their favor for the same reasons set forth in their Motion to Dismiss. Again, this Court denied Defendants' Motion to Dismiss, and the reasons given apply with equal force here. Accordingly, this factor does not weigh in favor of transfer.

. . .

For the reasons stated above, this Court finds that Defendants have failed to show, by clear and convincing evidence, that a balance of the nine factors weighs in favor of a transfer in venue. Accordingly, Defendants' Motion to Transfer is denied.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Docket No. 10) is denied. And further, that Defendants' alternative Motion to Transfer pursuant to 28 U.S.C. § 1404(a) (Docket No. 10) is also denied.

## V. ORDERS

IT IS HEREBY ORDERED, that Defendants' Motion to Dismiss (Docket No. 10) is DENIED.

FURTHER, that Defendants' Motion to Transfer to United States District Court for the Southern District of Ohio (Docket No. 10) is DENIED.

SO ORDERED.

Dated: June 2, 2009
       Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge